IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 10-753-02 |
| MICHAEL J. SCHLAGER | : | |

**UNITED STATES' CHANGE OF PLEA MEMORANDUM**

I.   **INTRODUCTION.**

Defendant Michael J. Schlager is charged in an indictment with one count of conspiracy to commit mail fraud affecting a financial institution (Count One), and eight counts of mail fraud affecting a financial institution (Counts Two through Nine), as well as aiding and abetting, in violation of Title 18, United States Code, Sections 371, 1341 and 2, arising from his management of a multi-year commercial loan fraud scheme that artificially inflated the revenues and concealed the loan delinquencies of his former employer, Equipment Finance, LLC. In total, the participants in this scheme caused a loss to EFI and others of $53 million. A change of plea hearing is scheduled for Wednesday, January 5, 2011, at 11:00 a.m.

II.   **PLEA AGREEMENT.**

Pursuant to the terms of the written guilty plea agreement, the defendant will plead guilty to Count One (conspiracy), and Counts Two and Three (mail fraud affecting a financial institution) of the indictment. The remaining counts, Counts Four through Nine, are to be dismissed as to this defendant at sentencing. An unexecuted copy of the plea agreement will be forwarded to the Court in advance of the hearing.

**III.     ESSENTIAL ELEMENTS OF THE OFFENSES.**

    A.     The essential elements of the offense charged in Count One (conspiracy), a violation of 18 U.S.C. § 371, are that:

        1.     Two or more persons agreed to commit offenses against the United States, as charged in the indictment;

        2.     The defendant was a party to or member of that agreement;

        3.     The defendant joined the agreement or conspiracy knowing of its objectives to commit offenses against the United States and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve common goals or objectives, to commit offenses against the United States; and

        4.     At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

    B.     The essential elements of the offenses charged in Counts Two and Three (mail fraud affecting a financial institution), a violation of 18 U.S.C. § 1341, are that:

        1.     The defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises (or wilfully participated in such a scheme with knowledge of its fraudulent nature);

        2.     The defendant acted with the intent to defraud;

        3.     That in advancing, furthering, or carrying out the scheme, the defendant used the mails (a private or commercial interstate carrier), or caused the mails (a private or commercial interstate carrier) to be used;

        4.     The scheme affected a financial institution.

    C.    To establish that the defendant is guilty of aiding and abetting another in the commission of a crime, in violation of 18 U.S.C. § 2, the government must prove that:

    1.    Another person committed the crime charged in the indictment by committing each of the elements of that offense;

    2.    The defendant knew that the offense was going to be committed or was being committed by another person;

    3.    The defendant did some act for the purpose of aiding, assisting, facilitating, or encouraging the other person in committing the offense and with the intent that that other person commit the offense; and

    4.    The defendant's acts did, in some way, aid, assist, facilitate, or encourage, the other person to commit the offense.

## IV. MAXIMUM PENALTIES.

The maximum statutory penalty that can be imposed on Count One (conspiracy), is five years imprisonment, three years supervised release, a $250,000 fine, and a $100 special assessment. On each of Counts Two and Three (mail fraud affecting a financial institution), the maximum statutory penalty is 30 years imprisonment, five years supervised release, a $1 million fine, and a $100 special assessment.

Total Maximum Sentence is: 65 years imprisonment, five years supervised release, a $2.25 million fine, and a $300 special assessment. Full restitution also shall be ordered. Forfeiture of all property constituting, or derived from, proceeds traceable to the commission of the offenses also may be ordered.

V.     **FACTUAL BASIS FOR THE PLEA.**

     If this case were to proceed to trial, the government would introduce competent evidence which would establish that from in or about January 2001, through April 2007, the defendant, Michael J. Schlager, served in a high-level position at Equipment Finance, LLC ("EFI").  During this time period, defendant Schlager managed a sophisticated loan fraud scheme that involved artificially inflating EFI's revenues and concealing its loan delinquencies, which caused losses to EFI and its owners of $53 million, and which led to the demise of EFI and its parent entities, Sterling Financial Corporation ("Sterling") and the Bank of Lancaster County, N.A. ("BLC").

     EFI was a logging industry lender based in Lititz, Pennsylvania, that provided financing for the purchase of forestry and land clearing equipment, primarily in the southeastern United States.  It was acquired by Sterling in or about March 2002.  Sterling was a diversified financial services company headquartered in Lancaster, Pennsylvania.  Through its affiliates and subsidiaries, Sterling provided financial services such as specialty commercial financing, fleet and equipment leasing, and investment, trust, and brokerage services for corporate and individual clients.  Sterling was a publically held company whose shares of stock were publically traded on the NASDAQ stock exchange.  When Sterling acquired EFI, it made EFI a wholly owned subsidiary of BLC.  BLC was a wholly-owned subsidiary of Sterling that was headquartered in Strasburg, Pennsylvania.  BLC was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation.  As a subsidiary of Sterling, EFI's books were examined on a regular basis by Sterling's internal auditor, Accume Partners, and its independent auditor, Ernst & Young, LLP ("E&Y").

From the time EFI was acquired by Sterling until April 2007, the value of EFI's loan portfolio grew on paper from approximately $80 million to approximately $330 million. During the 2006 to 2007 time period, EFI's purported net income accounted for approximately 30% of Sterling's purported net income.

Defendant Schlager was a Senior Vice President of EFI and its Recovery/Workout and Repossessed Equipment Manager. In that position, he was responsible for handling EFI repossessions, and he initiated and serviced loans.

Beginning in at least January 2001, defendant Schlager colluded with other EFI employees and with people who did not work at EFI to defraud EFI and others by artificially inflating EFI's revenues, concealing its loan delinquencies, and falsifying its books. Schlager conspired to make EFI appear more profitable than it actually was and make it appear that EFI was exposed to less risk than it actually was. Through these methods, he and co-conspirators Joseph Braas, Mary Stankiewicz, Misty Kroesen, and Curtis Kroesen, who worked at EFI, were able to keep their jobs, where each year they "earned" increasingly higher salaries and bonuses, and were able to continue to obtain funding for EFI from BLC and its other creditors.

One of the ways that defendant Schlager and others inflated EFI's assets was by creating bogus loans. Schlager and others who worked at EFI initiated loans that were in the names of fictitious borrowers, were in the names of borrowers who did not know about the loans and did not purchase the equipment listed, were in the names of borrowers who did not do business with EFI, were in the names of businesses that had previously been shut down, were in the names of deceased borrowers, were in the names of borrowers who were not loggers, were issued under alias borrower names in order to circumvent EFI's loan limit reporting policy, listed

5

down payments that had never been made, and were in the names of straw or nominal borrowers, that is, people who had been recruited and sometimes paid money to falsely sign EFI loan documents claiming to be loggers purchasing logging equipment.

Starting in at least January 2001, Schlager worked with co-defendant John Wiley Spann to create numerous bogus EFI loans.  Spann assisted Schlager by recruiting and paying nominal borrowers to sign false EFI loan paperwork and provide their personal identifying information.  Schlager was aware that Spann took some of the proceeds of the bogus EFI loans for himself.

In order to make the bogus loans appear to be legitimate, defendants Schlager, Braas, Stankiewicz, Misty Kroesen, and Curtis Kroesen, as well as others who did not work at EFI, filled EFI's files with false records and records designed to give a false impression of legitimacy, such as documents with forged borrower and dealer signatures, documents that listed down payments as having been paid when they were not, loan contracts that listed equipment that already secured one loan as the collateral on a separate loan, documents falsely purporting to show that equipment was insured, unfiled Uniform Commercial Code forms that were placed in the files to give the false impression that they had been properly filed, and bogus insurance premium invoices.

Defendant Schlager used the proceeds of the bogus loans to inflate assets and to conceal delinquencies.  He sometimes directed co-conspirators Stankiewicz and Misty Kroesen not to issue the usual proceeds checks to dealers when bogus loans were funded, but instead to credit the proceeds of the bogus loans to EFI's income account or as customer payments on other, unrelated loans.

Defendant Schlager also inflated EFI's assets by failing to report equipment repossessions. He carried loan files on EFI's books after the equipment securing the loans had been repossessed, and concealed the delinquent status of these loans by issuing improper deferrals.

Schlager and Spann also extracted over $1 million from EFI's insurance escrow account to use in the fraudulent scheme. At the end of each month, defendant Schlager directed Stankiewicz to prepare a list of accounts on which South Central Agency ("SCA") was the purported insurer. Defendant Schlager provided that list to Spann. Spann, with the permission of the principals of SCA, Harold Young and John Tomberlin, directed SCA employees to prepare false SCA invoices in the names of the purported borrowers on the list provided by defendant Schlager. Spann caused the false invoices to be faxed from SCA in Andalusia, Alabama, to EFI in Lititz, Pennsylvania. Defendant Schlager directed that the bills be paid, so then defendant Misty Kroesen issued checks payable to SCA and had them mailed to SCA. Young and Tomberlin kept some of the EFI money, and wrote checks for the rest as directed by Spann. Some of this money was eventually cycled back to EFI so that Schlager could use it to conceal loan delinquencies, some Spann kept for himself and used to pay his personal debts, and some Spann used to pay nominal borrowers.

Between January 2003 and December 2006, Schlager, Spann, Young, Tomberlin, and others caused approximately 25 bogus SCA insurance invoices to be submitted to EFI, totaling approximately $1,041,452.92. The defendants then caused approximately 22 EFI checks totaling approximately $1,041,452.92 to be forwarded to SCA as payment on the bogus invoices. Among those checks were the following: On January 30, 2003, the defendants caused EFI check

number 10071, in the amount of $35,000.00, to be mailed via Federal Express from EFI in Lititz, Pennsylvania, to SCA in Andalusia, Alabama.  On January 30, 2004, the defendants caused EFI check number 11164, in the amount of $125,818.00, to be mailed via Federal Express from EFI in Lititz, Pennsylvania, to SCA in Andalusia, Alabama.

   The defendant also undermined the audit process in order to conceal the true financial status of EFI.  He, along with other EFI employees, did so by submitting to the auditors false and misleading records, such as back-dated, whited-out, and altered documents, and interfering with the loan confirmation process.  In March 2007, when E&Y auditors requested evidence of specific customer payments that did not exist because the proceeds of bogus loans had been used to make the payments, defendant Schlager, along with Braas, directed Stankiewicz and Misty Kroesen to create documentation of approximately five fake check-by-phone payments to show to the auditors.  Schlager, Stankiewicz, and Kroesen then created the false records and submitted them to E&Y.  Defendant Schlager also bundled auditor confirmation letters for bogus loans and forwarded them to Spann so that Spann could obtain signatures on the false documents, whether by forging the signatures or by paying people in exchange for their signatures.  In approximately 2005, Schlager also directed Spann to coach some specific nominal borrowers about what to say if contacted by the auditors reviewing EFI's books.  Spann did contact these individuals, and he paid them several thousand dollars to lie if contacted.

   During the period of the fraud, the EFI reports that defendants Schlager and Braas provided to BLC and Sterling executives on a monthly and quarterly basis, as well as statements the defendant made at the meetings with BLC and Sterling management, included false information about, among other things, the number of new contracts purchased, EFI's income,

and EFI's delinquent accounts.

During the period of the conspiracy, defendant Schlager knew that Braas was also creating bogus EFI loans and using the proceeds to inflate assets and conceal delinquencies and that Braas was falsifying EFI's books.  Defendants Schlager and Braas worked together to conceal the fraudulent nature of the loans each was creating, to hide delinquencies on all EFI loans, including the bogus loans, to fool Sterling's auditors, and to conceal the true nature of EFI's financial status from executives at BLC and Sterling.

As of April 2007, when the fraud at EFI was discovered by Sterling, EFI had outstanding loans from BLC totaling approximately $200 million.  All loans from BLC were secured by EFI's loans.  Due to the size of the fraud and its impact on BLC's finances, Sterling immediately consolidated BLC with several of its other banks in order to pool capital.  Then in July 2007, Sterling itself announced that it had agreed to be purchased by PNC Financial Services Group, Inc.  That deal closed in the first quarter of 2008.

This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

        ZANE DAVID MEMEGER
        United States Attorney


        s/ Nancy E. Potts
        NANCY E. POTTS
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically, is available for viewing and downloading from the Electronic Case Filing system, and was served by first class U.S. mail upon:

>Cory J. Miller, Esq.
>Miller Law Associates PC
>53 N. Duke Street, Suite 304
>Lancaster, PA 17602
>*Counsel for Joseph M. Braas*

and was served by electronic filing upon:

>Joseph U. Metz, Esq.
>Dilworth Paxson LLP
>112 Market Street, 8th Floor
>Harrisburg, Pennsylvania 17101-1236
>*Counsel for Michael J. Schlager*
>
>Elizabeth Toplin, Esq.
>Defender Association of Philadelphia
>Federal Court Division
>The Curtis Center Building
>601 Walnut Street
>Suite 540 West
>Independence Square West
>Philadelphia, PA 19106
>*Counsel for Mary C. Stankiewicz*
>
>Jose L. Ongay, Esq.
>521 S. Second Street
>Philadelphia, PA 19147
>*Counsel for Misty L. Kroesen*
>
>Peter A. Levin, Esq.
>1927 Hamilton Street
>Philadelphia, PA  19130
>*Counsel for Curtis A. Kroesen*

Derek E. Yarbrough, Esq.
117 East Main Street
Dothan, AL 36301-1721
*Counsel for John Wiley Spann*

Douglas P. Earl, Esq.
1015 Chestnut Street, Suite 902
Philadelphia, PA 19107
*Counsel for John Wiley Spann*

Donald R. Jones, Jr., Esq.
2000 Interstate Park Drive, Suite 104
Montgomery, AL 36109
*Counsel for Harold W. Young*

Marc E. Davies, Esq.
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
*Counsel for John S. Tomberlin*

David Barger, Esq.
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
*Counsel for John S. Tomberlin*

Date: January 13, 2011         s/ Nancy E. Potts
                               Nancy E. Potts